1  PAUL L. REIN, ESQ. (State Bar No. 43053)
   CELIA MCGUINNESS, ESQ. (State Bar No. 159420)
2  CATHERINE CABALO, ESQ. (State Bar No. 248198)
   LAW OFFICES OF PAUL L. REIN
3  200 Lakeside Drive, Suite A
   Oakland, CA  94612
4  Telephone:  (510) 832-5001
   Facsimile:  (510) 832-4787
5  reinlawoffice@aol.com

6  Attorneys for Plaintiff
   ZACHARY WOODFORD
7

8  * Defendant's counsel listed after the caption

9

10            UNITED STATES DISTRICT COURT

11        FOR THE NORTHERN DISTRICT OF CALIFORNIA

12
   ZACHARY WOODFORD,
13
              Plaintiff,                    Case No. 14-03531 BLF
14
   v.                                       Civil Rights
15
   C. STAGNARO FISHING                      **CONSENT DECREE AND
16 CORPORATION dba GILDA'S                  [PROPOSED] ORDER AS TO
   RESTAURANT; CITY OF SANTA                INJUNCTIVE RELIEF ONLY**
17 CRUZ; and DOES 1-10, Inclusive,
18            Defendants.                    Action Filed: August 5, 2014

19 GEORGE J. KOVACEVICH, ESQ. (SBN 48125)
   CATHERINE M. BRONSON, ESQ. (SBN 267527)
20 ATCHISON, BARISONE, CONDOTTI & KOVACEVICH
   A Professional Corporation
21 PO BOX 481
   Santa Cruz, CA 95061-0481
22 Telephone: (831) 423-8383
   Facsimile:  (831) 576-2269
23 Email:      gkovacevich@abc-law.com

24 Attorneys for Defendant
   CITY OF SANTA CRUZ
25

26 //
   //
27 //

28 ─────────────────────────────────────
   CONSENT DECREE AND [PROPOSED]
   ORDER AS TO INJUNCTIVE RELIEF ONLY
   Case No. C14-03531 BLF
   S:\CASES\GILDA'S\PLEADINGS\Consent Decree\2015 03 04 Consent Decree & Order as to Injunctive Relief.docx

ROBERT E. BOSSO, ESQ. (SBN 36641)
BOSSO WILLIAMS
PO BOX 1822
Santa Cruz, CA 95061
Telephone: (831) 426-8484
Facsimile:  (831) 423-2839
Email:      rbosso@bossowilliams.com

Attorneys for Defendant
C. STAGNARO FISHING CORPORATION
dba GILDA'S RESTAURANT

1.      Plaintiff ZACHARY WOODFORD filed a Complaint in this action on August 5, 2014 to obtain recovery of damages for his discriminatory experiences, denial of access, and denial of his civil rights, and to enforce provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.* and 42 U.S.C. §12202 *et seq.*; and California civil rights laws against defendants C. STAGNARO FISHING CORPORATION dba GILDA'S RESTAURANT ("Tenant Defendant") and the CITY OF SANTA CRUZ (the "City") (defendants sometimes referred to together as "Defendants"), relating to the condition of Defendants' public accommodation, located at 37 Municipal Wharf in Santa Cruz, California (the "Restaurant"), and the Santa Cruz Wharf itself (the "Wharf") as of December 12, 2013 and continuing.

2.      Plaintiff and Defendants (together sometimes the "Parties") hereby enter into this Consent Decree and Order for the purpose of resolving injunctive relief without the need for protracted litigation.  Issues of damages and attorneys'

- 2 -

fees, costs, and expenses will be the subject of further negotiations and litigation if necessary.

**JURISDICTION:**

3.      The Parties to this Consent Decree and Order agree that the Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1331 for alleged violations of the Americans with Disabilities Act of 1990, 42 U.S.C. sections 12101 *et seq.* and 42 U.S.C. sections 12202 *et seq.*, and pursuant to supplemental jurisdiction for alleged violations of California Health & Safety Code sections 19955 *et seq.*; Title 24, California Code of Regulations; and California Civil Code sections 54, 54.1, and 55.

4.      In order to avoid the costs, expense, and uncertainty of protracted litigation, the Parties to this Consent Decree and Order agree to entry of this Consent Decree and Order to resolve all injunctive relief claims raised in the Complaint filed with this Court.  Accordingly, the Parties agree to the entry of this Order without trial or further adjudication of any issues of fact or law concerning Plaintiff's claims for injunctive relief.

WHEREFORE, the Parties to this Consent Decree hereby agree and stipulate to the Court's entry of this Consent Decree and Order, which provide as follows:

//

CONSENT DECREE AND [PROPOSED]
ORDER AS TO INJUNCTIVE RELIEF ONLY
Case No. C14-03531 BLF
S:\CASES\GILDA'S\PLEADINGS\Consent Decree\2015 03 04 Consent Decree & Order as to Injunctive Relief.docx

**SETTLEMENT OF INJUNCTIVE RELIEF:**

5.      This Order shall be a full, complete, and final disposition and settlement of Plaintiff's injunctive relief claims against Defendants that have arisen out of the subject Complaint.

6.      The Parties agree and stipulate that the corrective work will be performed in compliance with the standards and specifications for disabled access as set forth in the California Code of Regulations, Title 24-2, and Americans with Disabilities Act Standards for Accessible Design, unless other standards are specifically agreed to in this Consent Decree and Order.

a)      **Remedial Measures:** Defendants recognize the obligations to create access at the Restaurant are joint and several.  However, Tenant Defendant and the City agree to do the following:

i)      Tenant Defendant agrees to make the changes set forth in **Attachment A** (report from Jonathan Adler for inspection date October 23, 2014), which is attached and incorporated herewith.  Tenant Defendant agrees to create an accessible unisex restroom in the current waiting area of the Restaurant, per Mr. Adler's diagram "DWG-05" in **Attachment A** or, alternatively in Tenant Defendant's sole discretion, redo the current customer bathrooms per the floor plans (Sheet A2.1) by

- 4 -

William S. Bagnall Architects, Inc. (**Attachment B** to this Consent Decree).  Tenant Defendant also agrees to *maintain* the accessible conditions created by the work detailed in **Attachments A & B**.

ii)     The City agrees to complete the following:

(1)     Ensure that the set of restrooms closest to the Restaurant (northwest on the Wharf from the Restaurant) are fully accessible;

(2)     Ensure that the restrooms at the end of the Wharf are fully accessible; and

(3)     Create two (2) accessible parking stalls in front of the Restaurant, including one van-accessible stall. The location and configuration of these stalls are to be determined by Jonathan Adler and the City.

b)     **Timing of Injunctive Relief**:  Tenant Defendant will submit plans for all corrective work requiring permits to the appropriate governmental agencies within 15 days of the entry of this Consent Decree by the Court and will commence work within 20 days of receiving approval from the appropriate agencies.  Tenant Defendant will complete all corrective work described above in paragraph 6.a.i. within one year of execution of this Consent Decree and Order by

- 5 -

CONSENT DECREE AND [PROPOSED]
ORDER AS TO INJUNCTIVE RELIEF ONLY
Case No. C14-03531 BLF
S:\CASES\GILDA'S\PLEADINGS\Consent Decree\2015 03 04 Consent Decree & Order as to Injunctive Relief.docx

the Court.  The City will submit plans for all corrective work requiring permits to the appropriate governmental agencies within 60 days of the entry of this Consent Decree by the Court and will commence work within 60 days of receiving approval from the appropriate agencies.  The City will complete all corrective work described above in paragraph 6.a.ii. within nine (9) months of execution of this Consent Decree and Order by the Court.   In the event that unforeseen difficulties prevent Defendants from completing any of the agreed-upon injunctive relief, Defendants or their counsel will notify Plaintiff's counsel in writing within 5 days of discovering the delay.  Plaintiff will have thirty (30) days to investigate and meet and confer, and to approve the delay by stipulation or otherwise respond to Defendants' notice.  If the Parties cannot reach agreement regarding the delay within an additional fifteen days, Plaintiff may seek enforcement by the Court. Defendants or their counsel will notify Plaintiff's counsel when the corrective work is completed, and in any case will provide a status report to Plaintiff's counsel no later than 90 days from the Parties' signing of this Consent Decree and Order.

        c)      Defendants will notify Plaintiff in writing at the end of 90 days from the Parties' signing of this Consent Decree and Order as to the current status of agreed-to injunctive relief, and every 90 days thereafter until all access is provided.   If Defendants fail to provide injunctive relief on the agreed upon timetable and/or fail to provide timely written status notification, and Plaintiff files

- 6 -

a motion with the Court to obtain compliance with these terms, Plaintiff reserves the right to seek additional attorneys' fees for any compliance work necessitated by Defendants' failure to keep this agreement.  If the Parties disagree, such fees shall be set by the Court.

## DAMAGES, ATTORNEYS' FEES, LITIGATION EXPENSES, AND COSTS:

7.      The Parties have reached a separate agreement regarding Plaintiff's claims for damages, attorneys' fees, litigation expenses, and costs.

## ENTIRE CONSENT DECREE AND ORDER:

8.      This Consent Decree and Order, **Attachments A & B**, and the separate agreement regarding Plaintiff's claims for damages, attorneys' fees, litigation expenses, and costs constitute the entire agreement between the signing Parties and no other statement, promise, or agreement, either written or oral, made by any of the Parties or agents of any of the Parties that is not contained in this written Consent Decree and Order, shall be enforceable regarding the matters described herein.

//

//

//

- 7 -

**CONSENT DECREE AND ORDER BINDING ON PARTIES AND SUCCESSORS IN INTEREST:**

9.      This Consent Decree and Order shall be binding on Plaintiff, Defendants, and any successors-in-interest.  Defendants have a duty to so notify all such successors-in-interest of the existence and terms of this Consent Decree and Order during the period of the Court's jurisdiction of this Consent Decree and Order.

**MUTUAL RELEASE AND WAIVER OF CIVIL CODE SECTION 1542 AS TO INJUNCTIVE RELIEF ONLY:**

10.      Each of the Parties to this Consent Decree and Order understands and agrees that there is a risk and possibility that, subsequent to the execution of this Consent Decree and Order, any or all of them will incur, suffer, or experience some further loss or damage with respect to the lawsuit that is unknown or unanticipated at the time this Consent Decree and Order is signed.  Except for all obligations required in this Consent Decree and Order, the Parties intend that this Consent Decree and Order apply to all such further loss with respect to the lawsuit, except those caused by the Parties subsequent to the execution of this Consent Decree and Order.  Therefore, except for all obligations required in this Consent Decree and Order, this Consent Decree and Order shall apply to and cover any and all claims, demands, actions, and causes of action by the Parties to this Consent Decree with respect to the lawsuit, whether the same are known, unknown, or

CONSENT DECREE AND [PROPOSED]
ORDER AS TO INJUNCTIVE RELIEF ONLY
Case No. C14-03531 BLF
S:\CASES\GILDA'S\PLEADINGS\Consent Decree\2015 03 04 Consent Decree & Order as to Injunctive Relief.docx

1   hereafter discovered or ascertained, and the provisions of Section 1542 of the

2   California Civil Code are hereby expressly waived.  Section 1542 provides as

3   follows:

4

5   **A GENERAL RELEASE DOES NOT EXTEND TO**
    **CLAIMS WHICH THE CREDITOR DOES NOT**
    **KNOW OR SUSPECT TO EXIST IN HIS OR HER**
    **FAVOR AT THE TIME OF EXECUTING THE**
    **RELEASE, WHICH IF KNOWN BY HIM OR HER**
    **MUST HAVE MATERIALLY AFFECTED HIS**
    **SETTLEMENT WITH THE DEBTOR.**

6

7

8   This waiver applies to the injunctive relief aspects of this action only and does not

9   include resolution of Plaintiff's claims for damages, attorneys' fees, litigation

10  expenses, and costs.

11

12        11.    Except for all obligations required in this Consent Decree and Order --

13  and exclusive of Plaintiff's referenced continuing claims for damages, attorneys'

14  fees, litigation expenses, and costs – each of the Parties to this Consent Decree and

15  Order on behalf of each, their respective agents, representatives, predecessors,

16  successors, heirs, partners, and assigns, releases and forever discharges each other

17  Party and all officers, directors, shareholders, subsidiaries, joint venturers,

18  stockholders, partners, parent companies, employees, agents, attorneys, insurance

19  carriers, heirs, predecessors, and representatives of each other Party, from all

20  claims, demands, actions, and causes of action of whatever kind or nature,

21  presently known or unknown, arising out of or in any way connected with the

22  lawsuit.

- 9 -

**TERM OF THE CONSENT DECREE AND ORDER:**

12.     This Consent Decree and Order shall be in full force and effect -- and the Court shall retain jurisdiction of this action to enforce provisions of this Consent Decree and Order -- for a period of eighteen (18) months after the date of entry of this Consent Decree and Order by the Court or until the injunctive relief contemplated by this Order is completed, whichever occurs later.

**SEVERABILITY:**

13.     If any term of this Consent Decree and Order is determined by any court to be unenforceable, the other terms of this Consent Decree and Order shall nonetheless remain in full force and effect.

**SIGNATORIES BIND PARTIES:**

14.     Signatories on the behalf of the Parties represent that they are authorized to bind the Parties to this Consent Decree and Order.  This Consent Decree and Order may be signed in counterparts and a facsimile signature shall have the same force and effect as an original signature.

**END OF PAGE.**
**SIGNATURES CONTINUE ON THE NEXT PAGE AND ORDER IS AT THE END OF THE DOCUMENT.**

CONSENT DECREE AND [PROPOSED]
ORDER AS TO INJUNCTIVE RELIEF ONLY
Case No. C14-03531 BLF
S:\CASES\GILDA'S\PLEADINGS\Consent Decree\2015 03 04 Consent Decree & Order as to Injunctive Relief.docx

1  Dated: 3.12, 2015        PLAINTIFF ZACHARY WOODFORD

2

3                           ZACHARY WOODFORD

4

5  Dated: _____, 2015     DEFENDANT CITY OF SANTA CRUZ

6

7                           By: _____

8                           Print name: _____

9                           Title: _____

10

11 Dated: _____, 2015     DEFENDANT C. STAGNARO FISHING

12                               CORPORATION dba GILDA'S
                                 RESTAURANT
13

14                          By: _____

15                          Print name: _____

16                          Title: _____

17

18

19

20

21

22

23

24

25

26

27
                                        - 11 -
28 CONSENT DECREE AND [PROPOSED]
   ORDER AS TO INJUNCTIVE RELIEF ONLY
   Case No. C14-03531 BLF
   S:\CASES\GILDA'S\PLEADINGS\Consent Decree\2015 03 04 Consent Decree & Order as to Injunctive Relief.docx

1  Dated: _____, 2015          PLAINTIFF ZACHARY WOODFORD

2

3                                   _____

4                                   ZACHARY WOODFORD

5  Dated:   3-10  , 2015            DEFENDANT CITY OF SANTA CRUZ

6

7                                   By: _____

8                                   Print name: __Martin Bernal_____

9                                   Title: _____City Manager_____

10

11 Dated: _____, 2015          DEFENDANT C. STAGNARO FISHING

12                                        CORPORATION dba GILDA'S

13                                        RESTAURANT

14                                   By: _____

15                                   Print name: _____

16                                   Title: _____

17

18

19

20

21

22

23

24

25

26

27
                                          - 11 -
28

1   Dated: _____, 2015    PLAINTIFF ZACHARY WOODFORD

2

3

4                              ZACHARY WOODFORD

5   Dated: _____, 2015    DEFENDANT CITY OF SANTA CRUZ

6

7                              By: _____

8                              Print name: _____

9                              Title: _____

10

11  Dated: 3/11, 2015         DEFENDANT C. STAGNARO FISHING

12                              CORPORATION dba GILDA'S

13                              RESTAURANT

14                              By: _____

15                              Print name: Dino Stagnaro

16                              Title: President

17

18

19

20

21

22

23

24

25

26

27

28

- 11 -

1

APPROVED AS TO FORM:

2

3

Dated:  March 19, 2015                    LAW OFFICES OF PAUL L. REIN

4

5                                                              _____ */s/ Catherine Cabalo*
By:  CATHERINE CABALO, ESQ.

6                                              Attorneys for Plaintiff ZACHARY
WOODFORD

7

8

Dated:  March 10, 2015                    ATCHISON, BARISONE, CONDOTTI &
KOVACEVICH

9

10

11                                                        _____ */s/ George J. Kovacevich*
By:  GEORGE J. KOVACEVICH, ESQ.

12                                              Attorneys for Defendant
CITY OF SANTA CRUZ

13

14

15

Dated:  March 11, 2015                    BOSSO WILLIAMS

16

17                                                              _____ */s/ Robert E. Bosso*
By:  ROBERT E. BOSSO, ESQ.

18                                              Attorneys for Defendant
C. STAGNARO FISHING CORPORATION

19                                              dba GILDA'S RESTAURANT

20

21

22

23

24

25

26

27

28

- 12 -

1

## ORDER

2
      Pursuant to stipulation, and for good cause shown, **IT IS SO ORDERED**.

3

4

5
Dated: _____, 2015             _____

6
                                    Honorable Beth Labson Freeman
United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

- 13 -

28
CONSENT DECREE AND [PROPOSED]
ORDER AS TO INJUNCTIVE RELIEF ONLY
Case No. C14-03531 BLF
S:\CASES\GILDA'S\PLEADINGS\Consent Decree\2015 03 04 Consent Decree & Order as to Injunctive Relief.docx

1

## **FILER'S ATTESTATION**

2        Pursuant to General Order 45, section X(B), I hereby attest that on March

3  10, 2015, and March 11, 2015, I, Catherine Cabalo, attorney with The Law Office

4  of Paul L. Rein, received the concurrence of George Kovacevich and Robert Bosso

5  in the filing of this document.

6

7                               */s/ Catherine Cabalo*
                                 Catherine Cabalo

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE AND [PROPOSED]
ORDER AS TO INJUNCTIVE RELIEF ONLY
Case No. C14-03531 BLF
S:\CASES\GILDA'S\PLEADINGS\Consent Decree\2015 03 04 Consent Decree & Order as to Injunctive Relief.docx

**Gilda's Restaurant on the SC Wharf**
Disability Access Evaluation



Inspection date: 23 October 2014

Jonathan Adler, Principal
CA Certified Accessibility Specialist – CASp #003
ICC Accessibility Inspector/Plans Examiner # 0886919-21

1721 Seabright Ave., Santa Cruz, CA 95062
T  831.429.4191
F  831. 429.4192

www.accesscomplianceservices.net
ja@access-compliance.net

## I. Scope of Evaluation:

The following evaluation identifies features of the facility that do not conform with the following state and federal standards concerning accessibility for persons with disabilities, to features that are made available to the general public. The findings are based on my physical site inspection that was conducted in October 2014. I verified my findings by observation, measurements, and photographs.

> 2013 CBC - CA Title 24, Part 2, Volume 1
> 2010 ADA - 28 CFR Part 36, Subpart D
> 2010 ADA - 2004 ADAAG at 36 CFR part 1191, appendices B and D

The inaccessible features I observed at Gilda's Restaurant concern the operation of the primary entry doors, lack of wheelchair accessible seating in the main dining room and the bar, and lack of access in the two restrooms available to customers.

## II. Basis of Requirements to Improve Access

A. Primary Entrance Doors: The requirement to adjust, or if necessary replace the door closers in order to ensure proper operation, is based on both state and federal requirements to maintain features and equipment that are required to be accessible. (See CBC 11B-108, and ADA 28 CFR 36.211)

B. Dining & Bar Seating: Both the bar counter and the built-in booths in the dining room were constructed in 1972, before regulatory standards incorporated specific requirements for wheelchair accessible seating. Consequently, the requirement to provide accessible seating in each functional area (dining room and bar) is based solely on the obligation to remove barriers under Title III of the ADA when doing so is readily achievable (42 USC §12182(b)(2)(A)(iv)).

C. Restrooms: The requirement to improve accessibility of the restrooms has a number of bases.

1. Neither the entry doors nor the toilet stalls conform to the ANSI A117.1-1961), the standard that applied when they were originally built in 1972.

2 Alterations were done in approximately 1985 to repair damage due to a kitchen fire.  Neither the entry doors nor toilet stalls were modified at that time as required under CBC 2-105(b) 11B(4) in order to make accessible, the *path of travel* that served an area of alteration

3. Improving access to the restrooms by removing architectural barriers, is a requirement under Title III of the ADA, when doing so is *readily achievable (*42 USC §12182(b)(2)(A)(iv))

## III: Deficient Features and Recommendations for Remediation

**✔ ENTRY DOORS: Door closers are out of adjustment.**

Existing Conditions:                                    Applicable Standards
• Door Pressure: 10-lbs. and 11-lbs. ..................*(maximum 5-lb. required)*

• Closing Speed: 2.8 and 3.2 seconds  ...............*(max. 5 seconds required)*

RECOMMENDATION
Adjust the door closer or replace it if necessary, to ensure proper operating force and closing speed.

**✔ DINING AREA SEATING: Wheelchair accessible seating is not provided**

**Existing Conditions**
None of the 133 seating spaces (120 in booths + 13 at counter) meet the ADA standards.

• Counter seating consists of fixed stools at a 34" high counter that is supported by a solid base at which knee and toe space for a wheelchair user is not possible.

• Booth seating consists of built-in tables with fixed benches at each side.
    Wheelchair seating, which is possible only at the ends of tables, does not fully meet the standards, which require a minimum 30-inch wide space. The existing space at the ends of tables, measured between the front faces of opposing benches, is only 22-inches wide.

    Moreover, because the circulation aisles between the rows of tables are only 48" wide, a wheelchair user who sits at the end of a table protrudes into the aisle blocking more than half of it.

**Applicable Standards:**

5% of the seating is required to be wheelchair accessible by meeting the following specifications:
Countertop........................max. 34" high
Knee space........................30" wide - - - 27" high - - - 19" deep

> *ADAS 226.1 General. Where dining surfaces are provided for the consumption of food or drink, at least 5percent of the seating spaces and standing spaces at the dining surfaces shall comply with 902. In addition, where work surfaces are provided for use by other than employees, at least 5 percent shall comply with 902.*

> *226.2 Dispersion. Dining surfaces and work surfaces required to comply with 902 shall be dispersed throughout the space or facility containing dining surfaces and work surfaces.*

---

**DINING ROOM RECOMMENDATION**

If doing so is readily achievable, provide 6 wheelchair-seating spaces in the dining room. Disperse the seating in locations that offer choices of large and small tables as well as ones with ocean views. Perform the following:

- Remove the built-in booths at four locations and replace them with accessible tables.

- 6 wheelchair spaces will be provided if 2 of the locations each offer two wheelchair spaces at larger tables and 2 other locations with smaller tables yield one wheelchair space each. **See DWG-01**

---

• *Comment Concerning Dining Room Counter:*

*The eating counter with 13 fixed stools in the main dining room is not accessible. If the counter were newly built today, wheelchair seating would be required at the counter pursuant to CA Building Code standards for new construction, at Section 11B-226.2.*

*Of relevance to Gilda's however, the ADA standards, upon which barrier removal obligations are measured, require the following:*

> *"226.2 Dispersion. Dining surfaces and work surfaces required to comply with 902 shall be dispersed throughout the space or facility containing dining surfaces and work surfaces."*

*In my opinion, distributing wheelchair seating at table areas as shown in **DWG-01**, satisfies the requirement in a way that provides substantially equivalent opportunities to enjoy the advantages of the different types of seating at Gilda's Restaurant, which are seats with ocean views, and seats for large or small parties.*

*I recognize that, as plaintiff's counsel commented during the 11/12/14 inspection, individuals who prefer to dine alone often choose seats at a counter. However, I also note that the ability to remain alone is not ensured at a counter where strangers may sit in seats immediately adjacent, whereas eating by oneself at a small table does ensure privacy.*

**✔ BAR SEATING** - Wheelchair accessible seating is not provided

**Existing Conditions**

None of the 10 to 12 seating spaces at the 42-inch high bar is wheelchair accessible because under the ADA standards an accessible space would have a countertop that is maximum 34-inches high.

**Applicable Standards:**

Conformance with the ADA standards requires at least one section of counter that is maximum 34-inch high and has a 30-inch wide space underneath it for a wheelchair-user to sit belly-up to the bar as other customers can.

> *"ADAS 226.1 General. Where dining surfaces are provided for the consumption of food or drink, <u>at least 5 percent</u> of the seating spaces and standing spaces at the dining surfaces shall comply with 902."*

> *"ADAS 902.2 Clear Floor or Ground Space. A clear floor space complying with 305 positioned for a forward approach shall be provided. Knee and toe clearance complying with 306 shall be provided."*

> *"ADAS 902.3 Height. The tops of dining surfaces and work surfaces shall be 28 inches minimum and <u>34 inches maximum</u> above the finish floor or ground."*

> *"305.3 Size. The clear floor or ground space shall be <u>30 inches minimum</u> by 48 inches minimum."*

When such alterations are made to a bar counter, the CBC requires that the lower section of counter must be minimum 60-inches wide to allow a wheelchair user and a companion to sit together at the same height.

> *"11B-226.3 Dining surfaces exceeding 34 inches in height. Where food or drink is served for consumption at a counter exceeding 34 inches (864 mm) in height, a portion of the main counter 60 inches (1525 mm) minimum in length shall be provided in compliance with Section 11B-902.3."*

---

**BAR COUNTER RECOMMENDATION:**

If doing so is readily achievable, lower a 60-inch long section of bar to a height of 34" above the floor, and provide knee and toe space under the counter that is:

    - minimum 27-inches high
    - minimum 19-inches deep

**- See DWG-02 Bar Plan**

---

## ✔ RESTROOMS

### Existing Conditions

Both the men and women's restrooms have similar inaccessible features. The doors are too narrow and lack required maneuvering space. The doors to the toilet stalls are much too narrow as are the stalls themselves. For example, an accessible door provides a minimum 32-inch wide opening. Doors into the existing toilet stalls provide only 22-inch wide openings.

### Applicable Standards Chronologically

Based on information from the owner, the restaurant was built in 1972. Pursuant to H&S 19955, the standards that initially required accessibility were the ANSI A117.1-1961. The ANSI standards became enforceable for new construction of public accommodations in 1971. Some of the restroom features that did not meet the requirements at the original time of construction, include the following:

| Men | Women | Feature as built in 1972 | ANSI Requirement in 1972 |
|-----|-------|--------------------------|--------------------------|
| ✔ | ✔ | Entry door clear width is 29" | Min. 32" wide |
| ✔ | | Entry door maneuvering space - strike-edge is 2" wide | Min. 12" wide |
| | ✔ | Entry door maneuvering space - landing is 38" deep | Min. 60" deep |
| | | | |
| ✔ | ✔ | Toilet stall - entry door openings are 21" and 22" wide | Min. 32" wide |
| ✔ | ✔ | Toilet fixture - height of toilets is 16" AFF | 20" min/max |
| ✔ | | Urinal rim is 24" high | Max. 19" high |
| ✔ | ✔ | Dispensers: soap and paper towels 48" to 58" high | Max. 40" high |
| ✔ | ✔ | Toilet stall - compartments are 28" and 32" wide | Min. 36" wide<br>* Min. 60" today under the ADA |

Subsequent to the original construction, an alteration to repair damage from a kitchen fire in 1985 triggered requirements to improve path of travel features to meet the CA Building Code, which included improving accessibility of the restrooms. Additionally since 1992, the ADA has required *removal of barriers* in order to improve accessibility when doing such improvements is readily achievable.

### Analysis:

Like the original ANSI standards, conformance with the 1985 CBC or with the ADA standards would also require wider entry doors and maneuvering space at them.  The CBC in 1985 though, and all versions since, as well as the ADA, require much more maneuvering space for using the toilet than the original ANSI requirements did. At Gilda's, such space could only be achieved by enlarging a toilet stall in each room to more than twice its current size, or by removing fixtures to create more maneuvering space in the resultant single-user restrooms (See DWG-03 Existing + DWG-04 Single-User).

• Enlarging Toilet Compartments

It is not feasible to create an accessible toilet stall in the women's restroom and also retain the second toilet. It may be possible to modify the men's restroom to be accessible and still retain the toilet and urinal. However, the spaces would be the absolute minimum allowable and it would not be a comfortable room to use, especially for more than one person at a time.

• Reducing Fixtures to Create Accessible Single-User Restrooms

The total number of toilets and urinals currently provided is less than what would be required if the facility was built today. Reducing the number of fixtures from 2 in each restroom to only 1 in each would likely cause a hardship at a restaurant and bar that has more than 140 seats. All customers would have to wait longer to use the restroom, including those with disabilities.

**RESTROOM: RECOMMENDATION and REGULATORY BASIS**

**Recommendation**
Install an accessible unisex toilet in the central part of the restaurant that is now occupied by storage closet and waiting area **See DWG-05.**  Leave the existing toilet rooms as they are, except that directional signage to the new accessible alternative would be required at each inaccessible restroom. In this way, accessible toilet facilities would be provided and the total number of fixtures would actually be increased.

**Regulatory Basis**
Can the requirement to provide accessible toilet facilities be satisfied by building a new unisex restroom rather than by providing accessible facilities for each gender to use separately?

Yes, given the prevailing conditions at Gilda's restaurant, a unisex toilet room can satisfy state and federal requirements for accessible toilet facilities, as shown in the following examples.

**A)  ADA Path of Travel** - Under the ADA, providing a unisex restroom in lieu of accessible separate gender rooms may in certain situations be an allowable way to meet the requirements for alterations concerning "path of travel" provisions.

> *28 CFR 36.304*  (concerning path of travel requirements pursuant to alterations)
> *(2) In choosing which accessible elements to provide, priority should be given to those elements that will provide the greatest access, in the following order:*
> *(i) An accessible entrance;*
> *(ii) An accessible route to the altered area;*
> *(iii) At least one accessible restroom for each sex or a single unisex restroom;*
> *(iv) Accessible telephones;*
> *(v) Accessible drinking fountains; and*
> *(vi) When possible, additional accessible elements such as parking, storage, and alarms.*

Note that the requirement to provide an accessible path of travel (which includes restrooms) is in one sense a more restrictive requirement than is the obligation to conduct barrier removal. That is because the requirement to provide an accessible path of travel is not conditioned on whether doing so is readily achievable, as are barrier removal obligations. We therefore conclude that if a unisex restroom could be used to satisfy the path of travel requirements for an alteration, then surely it can be allowable to provide one under the readily achievable, barrier removal requirements.

**B) ADA Barrier Removal** - Under the ADA, removing architectural barriers to access is required when doing so is readily achievable. If compliance with the standards for new construction would not be readily achievable, other measures may be taken to remove the barrier that do not fully comply with the standards. In other words, if making the separate gender, multi-user restrooms accessible is not readily achievable because it would require expanding the rooms or reducing fixtures, Gilda's Restaurant may remove the barrier for persons with disabilities by creating a fully accessible unisex restroom.

> *28 CFR 36.304(d)(3) If, as a result of compliance with the alterations requirements specified in paragraph (d)(1) and (d)(2) of this section, the measures required to remove a barrier would not be readily achievable, a public accommodation may take **other readily achievable measures to remove the barrier that do not fully comply with the specified requirements**. Such measures include, for example, providing a ramp with a steeper slope or widening a doorway to a narrower width than that mandated by the alterations requirements. No measure shall be taken, however, that poses a significant risk to the health or safety of individuals with disabilities or others.*

**C) ADA: Alterations** - Under the ADA, measures that are taken to remove architectural barriers must meet the standards that apply to alterations.

> *36.304 Removal of Barriers*
>
> *(d) Relationship to alterations requirements of subpart D of this part.*
>
> *(1) Except as provided in paragraph (d)(3) of this section, measures taken to comply with the barrier removal requirements of this section <u>shall comply with the applicable requirements for alterations</u> in §36.402 and §§ 36.404 through 36.406 of this part for the element being altered.*

And under the ADA requirements for alterations, special technical provisions may apply when physical conditions such as insufficient space make it technically infeasible to comply with the literal requirements for separate gender, multi-user restrooms, or when local codes prohibit reduction of fixture count

> *4.1.6 Accessible Buildings: <u>Alterations</u>*
>
> *(3) Special Technical Provisions for Alterations to Existing Buildings and Facilities:*
>
> *(e) Toilet Rooms*
>
> *(i) Where it is technically infeasible to comply with 4.22 or 4.23, the installation of at least **one unisex toilet/bathroom per floor located in the same area as existing toilet facilities, will be permitted in lieu of modifying existing toilet facilities to be accessible**. Each unisex toilet room shall contain one water closet complying with 4.16 and one lavatory complying with 4.19, and the door shall have a privacy latch.*
>
> *(ii) Where it is technically infeasible to install a required standard stall (Fig. 30(a)), <u>or where other codes prohibit reduction of the fixture count</u> (i.e., removal of a water closet in order to create a double-wide stall), either alternate stall (Fig.30(b)) may be provided in lieu of the standard stall.*

**D) CBC Exceptions:** Concerning requirements under the California Building Code, the same conclusion could be proper to reach today as would have been proper under the codes of either 1985 when fire restoration was done. Changes to create access that involve enlarging the restrooms or reducing the number of plumbing fixtures at this particular facility, can pose an unreasonable hardship. An exception to the literal requirements of the code is proper in such situations, provided that "equivalent facilitation" is provided.

> ***CA H&S 19957.** In cases of practical difficulty, unnecessary hardship, or extreme differences, a building department responsible for the enforcement of this part may grant exceptions from the literal requirements of the standards and specifications required by this part or permit the use of other methods or materials, but only when it is clearly evident that equivalent facilitation and protection are thereby secured.*

In my opinion, equivalent facilitation can be achieved by constructing a new, fully accessible unisex toilet room.

**DWG–01**
**DINING ROOM – MODIFIED FOR 6 WHEELCHAIR SEATS**

Built–in booths are replaced with freestanding tables





DWG–02
BAR REMEDIATION

DWG-03
RESTROOMS EXISTING



**WOMEN**

Space Deficiencies

A: 29" (32" Req'd)
B: 38" (60" Req'd)
C: 21" (32" Req'd)
D: 29" (60" Req'd)

Other Features

– Toilet is too low
– Grab bars not provided
– Soap is too high
– Paper towel is too high

WOMEN

Exterior Landing

MEN

**MEN**

Space Deficiencies

A: 29" (32" Req'd)
B: 2" (18" Req'd)
C: 27" (32" Req'd)
D: 30" (42" Req'd)
E: 22" (32" Req'd)
F: 32" (60" Req'd)

Other Features

– Toilet is too low
– Grab bars not provided
– Urinal is too high
– Soap is too high
– Paper towel is too high

## DWG-04
## RESTROOMS MODIFIED FOR ACCESS
### Single-User Men
### Single-User Women



WOMEN

MEN

- Accessible entrances are provided.

- Toilet compartments are removed and these become separate gender single-user restrooms.

Note:
The men's restroom could be designed for two users. It would have a urinal in the main area and a private toilet compartment. The women's rooms could not accommodate two toilet compartment, in which one was accessible and the other one not.



DWG-05
New Unisex Restroom



Peter Bagnall, William Bagnall Architects - 3/4/2015 2:03 PM